And you're Mr. Price? That's right. I think we've granted your order for appointment of counsel. Thank you very much. Good morning. May it please the Court, counsel, ladies and gentlemen. I'm representing the petitioner on the Zahavious Corpus case involving – I'd like to reserve six minutes for rebuttal. Could you speak up just a bit? I'd like to reserve six minutes for rebuttal, please. Thank you. This is a Zahavious Corpus case arising from a killing that occurred, a murder conviction, of my client, Mr. Dobynes. The issue presented to the Court in this case surrounds around the use of testimony of two witnesses by the prosecution, which the state court determined were unavailable. One of the witnesses, Mr. Armstead, had actually been questioned in a conditional examination a few months prior to the trial. The other witness, Mr. Cohn, actually testified in open court before the jury that ultimately made the decision in Mr. Dobynes' case, but he refused to continue testifying during cross-examination. And he was allowed to step off the witness stand and then be declared unavailable. The judge struck that testimony, correct? The trial judge? Yes. And instructed the jury to disregard it? Yes. And then his preliminary hearing transcript testimony was used by the prosecution in a trial against Mr. Dobynes. Was that objected to? Yes. With respect to Mr. Armstead, as I've stated in the reply brief and in the opening brief, I'd like to preface with the statement from Ohio v. Roberts, United States Supreme Court case from 1980. It's clearly established that in order to prove that prior testimony falls within the unavailability exception to the Confrontation Clause, the government must show that it made a good-faith effort to obtain the witness's attendance at trial. And the court also identified, which I'm sure the court is aware of, the interests that a defendant has in cross-examination, which includes having the person testify under oath and be seen by the fact finder, that is the jury in this case. This was a jury trial. In this case, the state court, California Court of Appeal, which is the last court to issue a reasoned opinion, clearly issued a decision that was an unreasonable application of clearly established federal law, and also perhaps a simply erroneous decision. In this case, what happened with respect to Mr. Armstead, and I realize that I'm getting close to my limit. I might have to go over a little bit. What happened with Mr. Armstead is that early on he exhibited signs of recalcitrance. And so there was a first trial. That trial ended up being aborted because the judge determined that dual juries would be necessary. After that occurred, the prosecution had Mr. Armstead come in for a conditional examination. He was actually in custody at the time. He was then released. And if the court looks at the reply brief and the documents supporting it, the court can see that the prosecution clearly made very, very minimal efforts to get Mr. Armstead into court. Ultimately, during the trial in February of, I believe it was 1996, on February 16th, the prosecution had Mr. Armstead in court. The defense counsel was not present. The prosecution allowed him to leave the court without having him arrested or placed on electronic monitoring program or anything of that nature, allowed him to depart the courthouse during the trial, and he did not thereafter appear as a witness. And the prosecutor thereafter argued that he was unavailable. The finding that he was unavailable is therefore my – it is my argument that decision was clearly improper. And it prejudiced Mr. Dobbins because essentially what happened at the conditional examination was that the prosecutor merely conducted kind of a deposition of Mr. Armstead where she repeated the questions that the detective had asked him in an interview. And even though he clearly stated that he was not truthful with the detective, she just elicited those questions and then later used those in the trial. I'm going to reserve the balance of the time. Thank you. Okay. We'll hear from the State at this time. Mr. Fennessy. Good morning. May it please the Court. I'm Charles Fennessy, Deputy Attorney General, representing the State. And as the petitioner has already articulated, it's his disposition that the findings of the State court were contrary to a clearly established federal law, but he never clearly articulates what that federal law is. While the right of confrontation has been long recognized, the right of confrontation is not absolute. It's long been established that when a witness has been questioned in a judicial proceeding involving the same defendant and has been cross-examined, that if unavailable at the time of trial, that testimony may be, in fact, admitted. In this case, the federal district court concluded that the admission of that testimony was not only not a violation of any clearly established federal law, but, in fact, that it was a reasonable interpretation of the facts at trial. With particularity, there were two witnesses involved, and as already stated, one was subject to a conditional examination. It was a gang killing case. There was a good possibility that there would be some difficulty with witnesses. That was the reason for the conditional examination. There was a two-and-a-half-month delay between the time of the examination and the time of trial. The court determined, based on a significant number of facts, that there had been a good-faith effort made to make the witness available. That determination, that factual determination, is subject to some deference, and, in fact, this court may overturn that determination if it finds that the determination was unreasonable. But it has to be more than just clear error. The first witness, Armistead, my understanding is, was incarcerated on a material witness warrant. Right. He was not charged with any offense. He was initially held in custody because of the fact that he was a witness to the actual events. And after, I think he was initially released on an electronic monitoring system, he was brought in for the conditional examination. He was subject to a further subpoena. He was brought back in at some point and was questioned by the court, indicated that he would appear on that following occasion. And, indeed, when the trial commenced, and, again, there was a gap of some two-and-a-half months, he was unavailable or he could not be found after some diligence. Was the electronic monitoring stopped at some point? I believe that it was maintained until the time of the initial conditional examination. Okay. If there are no further questions, respondent urges that the same determination made by the district court is followed by this court. Thank you, Your Honor. Thank you. Rebuttal. I'd like to point out in the transcript of the closing argument of prosecution that the testimony of both of these witnesses, Mr. Cohn. Well, Mr. Cohn was actually an adverse, hostile-type witness because he was in the car of the decedent. And his testimony was very self-serving. There was testimony by the detectives and many other people that the congregants at this park were all armed. This was a park where gang members went. Everybody was armed. Women had guns in their purses. And these gentlemen were definitely at this park. So Mr. Cohn, who went up there on the witness stand, he admitted that he was not in fear for his safety. He was in prison. He was getting out in about two years. He stood up there on the stand, admitted that he was not in fear. He just didn't want to testify. He didn't feel like it. The judge did not find him in contempt. But he had every reason to testify falsely against Mr. Dobbins. And in his preliminary hearing testimony, which took place about one year prior to the trial, Mr. Dobbins did not have the same type of need or compunction to question him. Also, he could not cross-examine Mr. Dobbins about anything that had occurred during that entire year from the preliminary hearing testimony to the trial. With respect to Mr. Armstead, apparently the electronic monitoring did not work. So he had to be rearrested. And one passage from the closing argument of the prosecution that I think is instructive is on page 1035 of the transcript. And she clearly says that Mr. Armstead repeats exactly what occurred, and at that time, as opposed to the second statement, Mr. Armstead didn't have the defendant staring him down. He didn't have the defendant in his presence. He knows that he is not supposed to say anything to get them in trouble. That clearly shows the motive of the prosecution to not have Mr. Armstead in court, up there on the witness stand, so he can be viewed by the jury. I believe in this case Mr. Dobbins was prejudiced because of his inability to cross-examine Mr. Cohn as to any of the statements that were made subsequent to his preliminary hearing testimony. And with respect to Mr. Armstead, having what amounted to an interrogation session by a detective with no cross-examination whatsoever. Thank you. Okay. The case just argued will be submitted. We'll proceed to the next case on the calendar, which is Robinson v. Ignacio. Counsel will come forward. Mr. Lambrose? Good morning. Good morning. John Lambrose on behalf of Mr. Robinson. This case should be reversed and remanded with instructions that the writ direct the Nevada State Courts to give Mr. Robinson a new sentencing
judges: Hawkins, Thomas, Clifton